**Arnold RAMOS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–99–00188–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 26, 2000.

---

9. Rights of Crime Victims Act, 69th Leg. R.S, ch.235, § 2, 1985 Tex.Gen.Laws 2217, 2219.

William C. Hodge, Houston, for Appellant.

John B. Holmes, Luther A. Dulevitz, Houston, for State.

Panel consists of Justices MIRABAL, TAFT, and DUGGAN.*

## OPINION

MARGARET GARNER MIRABAL, Justice.

Appellant, Arnold Ramos, filed a pretrial motion to suppress evidence seized pursuant to a search warrant. After the trial court denied the motion, and subject to being allowed to pursue this appeal, appellant pled guilty to the offense of possession of marihuana in a useable quantity of more than 50 pounds and less than 2000 pounds. The trial court assessed punishment at seven years confinement.

In a single issue, appellant asserts the trial court erred in denying his motion to suppress the evidence seized under the search warrant, arguing that the information in the affidavit underlying the search warrant was insufficient to establish probable cause. We affirm.

### The Affidavit

On July 9, 1998, Houston Police Officer J. Fondon obtained a narcotics search warrant for a Harris County residence. Officer Fondon's affidavit in support of the search warrant states in relevant part:

It is the belief of the affiant, and the affiant hereby charges and accuses that [an unnamed, but described, Hispanic male at the residence] is in possession of the [cocaine and/or marihuana], having the intent to deliver said controlled substance to person or persons unknown. My belief of the aforesaid statement is based on the following facts: Your affiant received information that the listed location was being used by a Hispanic male to store numerous pounds of marijuana and possibly cocaine with the intent to distribute that marijuana and cocaine to other individuals throughout the area. Surveillance was conducted on July 8, 1998 at the location for several hours to establish that there were two individuals in the residence. One being the Hispanic male who lives there and a Black male who spent the night and is driving a white Chevrolet pick up truck. Texas plate RT8360. Surveillance was conducted last night until 6 am this morning. Around 2:30 am a black vehicle arrived at the residence and a few minutes later a white Explorer arrived along with the previous white truck. All occupants went inside around 3:30 am the black vehicle left with an unknown

---

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

occupant. Surveillance was again conducted around 8:30 am the white truck was still in the driveway were [sic] it was at 6 am. Around 11 am July 9, 1998 a Black male got into the white pick up and left the location, officers were unsure if he put anything into the vehicle. The Black male made several heat runs through the neighborhood and then left north on Cook road. The suspect then went east on Bellaire to the Beltway. The suspect then went south on the Beltway service road. Officer Craig observed a dark green trash bag in the bed of the pick up truck. Officer Gregory (marked unit) ran the plate and found that it came back with city traffic warrants. After the vehicle passed Beechnut Officer Gregory attempted to stop the vehicle and the suspect refused to stop and continued south on the Beltway service road. When the suspect got to the next intersection he began to drive at a high rate of speed and Officer Gregory put out the chase over the police radio. The suspect turned down Boone Loop and jumped out of the truck and fled on foot into the woods and was arrested by Officer Gregory. Your affiant went to the pick up truck and checked the plastic trash bag and noticed a distinct odor of marijuana, the bag weighing approximately 20 pounds. Based on the fact that your affiant has received information about this location storing a great amount of marijuana and cocaine for sell [sic], and that the pick up truck was parked at the location over night and after it left the location it made no other stops that would allow the plastic bag to be placed in the truck except from the listed residence. And that the plastic bag contains a green leafy substance that smells like marijuana and looks like marijuana weighing approximately 20 pounds. With the information obtained, your affiant believes there is a greater amount of marijuana

and possibly an unknown amount of powder cocaine being stored in [the described residence].

At a suppression hearing, held January 13, 1999, Officer Fondon was the only witness. Officer Fondon confirmed his statements in the affidavit; he did not offer any information that was not already included in the affidavit. He also confirmed that the magistrate granted the warrant based on his affidavit, rather than any supplemental testimony or other evidence.

Appellant does not dispute the accuracy of the statements in the affidavit, nor does he dispute the officer's testimony confirming the statements; rather, he argues that the facts alleged in the affidavit are not sufficient to establish probable cause.

### Standard of Review

 Because the facts of this case do not involve an evaluation of credibility of any witness by the trial court and probable cause is a question of law, we conduct a *de novo* review of the trial court's determination. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997); *see also, Maestas v. State,* 987 S.W.2d 59, 60 (Tex.Crim.App. 1999); *Wynn v. State,* 996 S.W.2d 324, 326–27 (Tex.App.—Fort Worth 1999, no pet.). This standard includes a *de novo* review of the affidavit.[1] *Id.*

### Analysis

Applying this *de novo* standard, we consider appellant's issue. Appellant asserts the affidavit is insufficient because: (1) it fails to describe the informant, specifically in terms of reliability and credibility; (2) there was a gap in the surveillance (between 6:00–8:30 a.m.); and (3) no one saw the trash bag being loaded into the truck.

 Whether the facts alleged in a probable cause affidavit sufficiently support a search warrant is determined by

---

1. We are aware that there is disagreement about the correct standard of review in a case such as this. *See Daniels v. State,* 999 S.W.2d 52, 54 (Tex.App.—Houston [14th Dist.] 1999, no pet.); *State v. Bradley,* 966 S.W.2d 871, 873–74 (Tex.App.—Austin 1998, no pet.).

examining the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 228–30, 103 S.Ct. 2317, 2326–28, 76 L.Ed.2d 527 (1983); *Ramos v. State,* 934 S.W.2d 358, 362–63 (Tex.Crim.App.1996); *see also* TEX.CODE CRIM.P.ANN. art. 18.01(b) (Vernon Supp.2000). The allegations are sufficient if they justify a conclusion that the object of the search is probably on the premises. *Ramos,* 934 S.W.2d at 363.

 Only the facts found within the four corners of the affidavit may be considered. *Jones v. State,* 833 S.W.2d 118, 123 (Tex.Crim.App.1992). However, reasonable inferences may be drawn from the affidavit. *Gibbs v. State,* 819 S.W.2d 821, 830 (Tex.Crim.App.1991). We interpret an affidavit in a common sense and realistic manner. *Id.*

 Appellant complains that the affidavit contains insufficient information about the informant. We agree that the statements pertaining to the informant, standing alone, are inadequate to establish probable cause. *See Powell v. State,* 505 S.W.2d 585, 586 (Tex.Crim.App.1974). However, the affidavit does not rely solely on the informant's statement to the officer. Rather, it also relies on the observations of the officers during their surveillance of the house, and the connection between the house and the truck that contained the marihuana.

During the surveillance the police observed appellant, whose description was consistent with the information received from the informant. In the morning, a man who had spent the night in the house exited the house and got into a white pickup truck that appeared to have been in the driveway all night. Although there was a gap in surveillance during the early morning hours, the affidavit states the truck was in the same place, indicating it had not been moved during the time the surveillance team was gone. Once the truck left the house, the affidavit shows that it made no stops such as to permit it to pick up a 20–pound bag. The presence of the large, dark bag in the white bed of the truck and the "heat runs" through the neighborhood indicate that the driver knew that there was a bag in the truck that contained contraband.[2] Because 20 pounds of marihuana has substantial value, it is reasonable to infer that it was not left overnight in the truck, but rather was placed in the bed of the truck when the driver exited the house and entered the truck. The informant had said there were numerous pounds of marihuana at the house.

We conclude that the allegations in the affidavit justify a reasonable conclusion that marihuana was at the residence. Accordingly, we overrule the issue.

We affirm the trial court's judgment.

2. "Heat runs" is a term used to describe a driver's efforts to determine whether or not he is under surveillance.